UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH JABIR POPE,         ) | |
|                            ) | |
| Plaintiff,      ) | |
| v.                         ) | CIVIL ACTION |
|                            ) | NO. 14-14373-ADB |
| JOHN D. LEWIS,             ) | |
|                            ) | |
| Defendant.     ) | |

# REPORT AND RECOMMENDATION ON
# PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

August 24, 2017

DEIN, U.S.M.J.

## I.   INTRODUCTION

Plaintiff Joseph Jabir Pope ("Pope"), an inmate at MCI-Norfolk, claims to be the sole owner of the copyright to a documentary film entitled "Word From The Joint" (the "motion picture/video" or the "film"). On November 24, 2014, he brought this action pro se against his former friend and fellow inmate, John D. Lewis ("Lewis"), claiming that Lewis infringed upon his copyright and otherwise violated his rights by posting the motion picture/video on the internet and promoting the work as his own.[1]

Although Lewis responded to Pope's complaint, he subsequently failed to appear in court, notify the court of his whereabouts, or demonstrate an intent to engage in the defense of this action. On December 1, 2016, Pope filed a motion for the entry of default. (Docket No.

---

[1] As a result of a prior ruling of this court, the only remaining claim in this matter is for copyright infringement. See Docket No. 46.

47). Default was entered on January 27, 2017. (Docket No. 52). On February 14, 2017, Pope filed a motion for default judgment (Docket No. 55) in the amount of $36,000 and for a permanent injunction and costs.  Lewis did not respond to the motion.

Upon considering Pope's motion for a default judgment and the accompanying affidavit, this court entered an order on May 4, 2017 (Docket No. 57) in which it concluded that because Pope had not submitted any evidence in support of his claim for actual damages, the affidavit he submitted with his motion for default judgment appeared too speculative to support a final default judgment. Accordingly, this court ordered Pope to provide further evidence of damages. Specifically, this court ordered that to the extent Pope wished to pursue actual damages, he should include any available documents that substantiated his claim, and to the extent that he wished to pursue statutory damages, he should indicate which factors he would like the court to consider in calculating an appropriate award and explain why those factors support a claim in the case. See id. See also Fed. R. Civ. P. 55(b); KPS & Assoc., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19-21 (1st Cir. 2003) (describing the need for evidence to establish damages even where defendant has been defaulted). Pope filed a responsive affidavit on May 18, 2017, in which he asserted that he would like to pursue statutory damages in the amount of $50,000. (See Docket No. 58).  For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Pope be awarded $5,000 in statutory damages, injunctive relief as described below, and his court fees and costs.

## II. STATEMENT OF FACTS

### Plaintiff's Copyright Registration

As described above, the plaintiff is presently incarcerated at MCI-Norfolk. (Compl. (Docket No. 10) ¶¶ 1, 4). Previously, however, he was housed at the Old Colony Correctional Center in Bridgewater, Massachusetts ("OCCC"), where he took part in the development of the film at issue in this litigation. (Id. ¶ 5). According to Pope, he and a number of other prisoners came up with the idea of making a motion picture/video called "Word From The Joint" in response to the gang violence that was plaguing communities in and around Boston. (See id. ¶ 6). The purpose of the project was to educate gang members about the harsh realities of prison life, with the hope of persuading them to follow a different path and avoid criminal conviction. (See id. ¶ 7). After obtaining approval from the Commissioner of Correction, Pope allegedly took responsibility for writing both the script and the music for the motion picture/video. (Id. ¶¶ 8-9). He also played a leading role in the motion picture/video, along with other inmates from OCCC. (Id. ¶ 9). Pope claims that filming was conducted, and the motion picture/video was completed, with assistance from an outside production company. (Id.).

Following the project's completion, Pope allegedly sought and obtained a copyright registration for the motion picture/video. (Id. ¶ 10). Pope claims that the copyright is evidenced by Certificate of Registration Number PAU1-894-352. (Id.). He also claims that the Certificate establishes his rights as the owner of the work "Word From The Joint." (Id.).

Allegedly, "Word From The Joint" has been entered in numerous film festivals, and has won a number of awards, including a CINE Golden Eagle award from the Council of International Non-Theatrical Events, a Gold Apple from the National Educational Film Festival, and a Special Merit Award from the Prozed Pieces Film Video Festival. (Id. ¶ 11). It has also been marketed to educational institutions, law enforcement and corrections personnel, and is available for sale or as a rental. (Id. ¶ 12; Compl. Ex. a). The record indicates that Pope previously sued the film's co-producer, Anthony Tenczar, for falsely representing that the production was his alone. (Compl. at p. 3). The plaintiff claims that his lawsuit against Tenczar settled, and that he has since received royalties from sales and rentals of the motion picture/video. (See id.; Compl. Ex. c).

### Pope's Relationship with the Defendant

The defendant, Lewis, is a private citizen who resides in Massachusetts. (Compl. ¶ 2). Pope met him, and allegedly became good friends with him, while the parties were both incarcerated at MCI-Norfolk. (Id. ¶ 13). Pope claims that he advised Lewis, who is slightly younger than the plaintiff, and tried to prepare him to lead a productive life following his release from prison. (Id.). He further claims that Lewis agreed to follow Pope's instructions with respect to the motion picture/video "Word From The Joint," and to protect the plaintiff's interests in the film, after his return to the community. (Id.).

Allegedly, Lewis left MCI-Norfolk in 2007 and continued to reside in the Boston area. (Id. ¶ 14). He also assisted Pope with his efforts to promote and distribute "Word From The Joint." (See id. ¶¶ 15-18). For example, Lewis allegedly assisted the plaintiff by transferring the motion picture/video from an analog format to a digital format. (Id. ¶ 15). He also complied

with Pope's requests to deliver the film to various groups and individuals.  (Id. ¶ 16).  At some point, however, Lewis allegedly told the plaintiff not to call him anymore, and that any necessary contact should only occur by mail.  (Id. ¶ 18).

### **Lewis' Alleged Unlawful Conduct**

While these activities were occurring, Pope was allegedly attempting to finish a book and create a website aimed at promoting and generating sales of his creative works, including "Word From The Joint" and the accompanying music.  (See id. ¶¶ 17-20).  Pope claims that he retained Leonard Swafford-Donald, the President of an entity known as "Master Builders Publications," to assist him in this endeavor.  (Id. ¶ 19).  During the course of his work on the website, Mr. Swafford-Donald allegedly discovered that "Word From The Joint" had been uploaded to YouTube under the name John D. Lewis.  (Id. ¶ 21; Compl. Ex. b).  Mr. Swafford-Donald notified the plaintiff of his discovery in about late October 2014.  (Id. ¶ 22).

Pope claims that he asked Mr. Swafford-Donald to contact Lewis, instruct him to take the film down from YouTube within a week, and pay the plaintiff a fee of $250.  (Id. ¶ 23).  Allegedly, Mr. Swafford-Donald spoke with Lewis as requested, and Lewis informed him that he would contact Pope directly.  (Id. ¶ 24).  According to the plaintiff, however, Lewis never contacted him.  (Id. ¶ 25).  Nor has he removed "Word From The Joint" from YouTube. (Id.).  Pope claims that Lewis' actions are infringing upon his copyright, and are depriving him of his rights to the film and the accompanying music.  (See id. ¶¶ 27-28).  In addition, Pope claims that Lewis is depriving him of sales and rental fees by making his work freely available to the public for download from YouTube, or by keeping the proceeds and fees for himself.  (See id. ¶¶ 27-28).

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Entering Default Judgment

"As set forth in Fed. R. Civ. P. 55(b), a plaintiff 'must apply to the court for a default judgment' where the amount of damages claimed is not a sum certain." Sec. and Exch. Comm'n v. Tropikgadget FZE., 146 F. Supp. 3d 270, 274–75 (D. Mass. 2015) (quoting Fed. R. Civ. P. 55(b)(2)) (internal citation omitted). "As to the issue of liability, the entry of default constitutes an admission of all facts well-pleaded in the complaint." Id. (internal quotation and citation omitted). Because Lewis has defaulted in this case, he is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc., (In re The Home Rests., Inc.), 285 F.3d 111, 114 (1st Cir. 2002) (internal quotation and citation omitted). On a motion for a default judgment, however, it is appropriate to independently "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). "Assuming that the facts alleged state a viable cause of action, the defendant's liability will be established." Tropikgadget FZE., 146 F. Supp. 3d at 275.

Generally, a court may enter default judgment without a hearing if it "has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d at 114.

This court has subject matter jurisdiction over Pope's claim of copyright infringement pursuant to 28 U.S.C. § 1338(a), and, as was determined in a prior order of the court, has personal jurisdiction over Lewis. See Docket No. 46 at 7-9. Furthermore, in that order, this court also determined that Pope adequately alleged facts sufficient to state a claim of copyright infringement. See id. at 11-12.

Having determined that the court has jurisdiction over the subject matter and the defendant, and that the complaint is sufficient to support the default judgment, the court turns to Pope's requested relief.

### B. Relief Requested By the Plaintiff

#### i. Statutory Damages

Under the Copyright Act, "a court can award statutory damages of not less than $750 or more than $30,000, 'as the court considers just,' for all infringements with respect to one work[.]" Bryant v. Media Right Prods., Inc., 603 F.3d 135, 139 (2d Cir. 2010) (quoting 17 U.S.C. § 504(c)(1)).  Moreover, "[i]f the copyright holder proves that infringement was willful, the court may increase the award to no more than $150,000." Id.  Even under such circumstances, however, "[t]here must be some basis, such as . . . sufficient affidavits, [to support] the court's judgment." Curet-Velazquez v. Acemla de P.R., Inc., 656 F.3d 47, 58 (1st Cir. 2011). Furthermore, even where infringement is found to be willful, "it is still within the fact-finder's discretion to award less than the maximum" of $150,000 "all the way down to the statutory minimum of $750." Fitzgerald v. CBS Broad., Inc., 491 F. Supp. 2d 177, 190 (D. Mass. 2007) (internal citation omitted).

When determining the amount of statutory damages to award for copyright infringement, the court may consider such factors as "[any] expenses saved and profits reaped by the defendant[ ] in connection with the infringement[ ], [any] revenues lost by the plaintiff[ ] as a result of the defendant's conduct, and the state of mind of the infringer[ ]," such as whether his infringement was willful or innocent. Curet-Velazquez, 656 F.3d at 58 (quotations and citation omitted). "Infringement is willful when the infringer knew or should have known that [his] action was copyright infringement." Fitzgerald, 491 F. Supp. 2d at 190. See also Homeowner Options for Mass. Elders, Inc. v. Brookline Bancorp, Inc., 754 F. Supp. 2d 201, 209 (D. Mass. 2010) ("An infringement is willful if the defendants knew or should have known that their conduct constituted copyright infringement, or acted in reckless disregard of the copyright holder's rights"). "[T]he willfulness of the defendants may be inferred from their failure to appear and defend this action." Merch. Media, LLC v. H.S.M. Int'l, No. 05-CV-2817, 2006 WL 3479022, at *5 (S.D.N.Y. Nov. 30, 2006).

In addition to the factors listed above, the court may consider the number of infringements, and the extent to which statutory damages would deter future unlawful conduct by the infringer or third parties. See Bryant, 603 F.3d at 144 (describing factors that court will consider in awarding statutory damages); Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004) (same). It also may consider the defendant's lack of cooperation and failure to participate in the litigation. See Curet-Velazquez, 656 F.3d at 59 (district court properly took defendants' lack of cooperation into account in awarding statutory damages for copyright infringement). Ultimately, however, "the court's discretion and sense of justice are controlling in its award of statutory damages[,]" as long as the court adheres to the limits set

forth by Congress. Curet-Velazquez, 656 F.3d at 58 (quoting Markham v. A.E. Borden Co., 221 F.2d 586, 587 (1st Cir. 1955)) (internal quotations and punctuation omitted).

"In cases where an amount greater than the specified minimum is sought, the determination of whether to conduct a hearing, or instead to find that the record before the court is sufficient to adequately inform its analysis, rests with the discretion of the court." Disney Enters., Inc. v. Merchant, No. 6:05-CV-1489, 2007 WL 1101110, at *4 (N.D.N.Y. April 10, 2007) (citing Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 63-64 (1st Cir. 2002)); see also Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 3 (1st Cir. 1983) ("Although there need not be the kind of hearing required if factual damages were the issue, . . . there must, we think, be either some hearing or sufficient affidavits to give the trial judge an adequate reference base for his judgment."). This court finds that the evidence put forth in the plaintiff's affidavits and verified complaint and exhibits thereto provide a sufficient basis for this court to issue a finding of statutory damages.

Pope claims $50,000 in statutory damages on the basis of the defendant's willful infringement of his copyright and the losses Pope suffered as a result of the unauthorized views of his motion picture/video on the internet. This court finds that plaintiff has put forth sufficient evidence that the defendant's copyright infringement was willful. Pope alleged that he and Lewis had a verbal agreement "to protect" the film (Compl. ¶ 13); that as part of that agreement, Lewis was only to do with the film what Pope instructed (Id.); that Pope did not instruct Lewis to post the film on YouTube (Id. ¶ 26); that Pope, through Mr. Swafford-Donald, informed Lewis to take the film down from YouTube (Compl. ¶¶ 23-24); and that Lewis did not do so (Id. ¶ 25). Lewis initially appeared in this action, so he clearly was aware of Pope's claims.

These facts, along with Lewis' default in this matter, are sufficient for a finding of willfulness. See Disney Enters., 2007 WL 1101110 at *4 (willfulness found where defendant defaulted and defendant knew or reasonably should have known that he was participating in the distribution of a pirated copy of the motion picture because the home video release date for the motion picture at issue had not yet occurred and thus no authorized copies of that copyrighted work were available to the public); see also Merch. Media, 2006 WL 3479022, at *5 (willfulness found where defendant continued to sell infringing items in the face of two cease-and-desist letters from plaintiffs and defendant failed to appear and defend action); Broad. Music, Inc. v. C.B.G., Inc., No. 11-CV-40142, 2013 WL 6074121, at *4-5 (D. Mass. Nov. 15, 2013) (finding willfulness where defendant continually refused to obtain a license to play copyrighted songs despite many calls and letters by the plaintiff warning about the risk of infringement and offering to enter into a licensing agreement with defendants); Sixx Gunner Music v. The Quest, Inc., 777 F. Supp. 2d 272, 274 (D. Mass. 2011) (finding inference of willfulness where defendant received multiple notifications that it was illegally using copyrighted music).

Pope has also provided evidence that the motion picture/video was viewed 56 times on YouTube (Compl. Ex. b), and that at some point in time, the purchase price of the film ranged from $39.99 to $295.00 (see Docket No. 2 at ¶ 5) and the rental price was $75.00. (Compl. Ex. a). Given these facts[2] and statutory damage awards in other cases, this court concludes that $5,000 is reasonable and necessary as a statutory damage award in this case, and will have the

---

[2] For example, if each of the 56 viewers had rented the film at $75 per rental, the loss would have been $4,200.00. The court has accepted Pope's representations concerning the prices of rentals and purchases, although no additional document supporting the conclusion that those amounts have actually been paid has been provided.

requisite deterrent effect on the defendant. See Disney Enters., 2007 WL 1101110 at *6 (statutory damages award of $6,000 appropriate where there was a finding of willful infringement and defendant distributed to others, without authorization, copies of copyrighted motion pictures by using a peer-to-peer network on the internet); Sony Pictures Home Entm't Inc. v. Chetney, No. 5:06-CV-227, 2007 WL 655772, at *3 (N.D.N.Y. Feb. 26, 2007) (same).

### ii. Permanent Injunction

A court adjudicating a claim of copyright infringement may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "Courts have traditionally considered four factors in determining whether to grant a request for a permanent injunction: (1) whether the plaintiff 'has suffered an irreparable injury'; (2) whether 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury'; (3) whether 'considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted'; and (4) whether 'the public interest would not be disserved by a permanent injunction.'"[3] Sony BMG Music Entm't v. Tenenbaum, No. 07-CV-11446-NG, 2009 WL 4723397, at *1 (D. Mass. Dec. 7, 2009) (*permanent injunction aff'd on appeal*, 660 F.3d 487, 515 (1st Cir. 2011)) (quoting CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008)). Furthermore, "[a] finding of liability for copyright infringement, combined with the threat of future infringement, justifies the imposition of a

---

[3] The First Circuit has suggested that this four-factor test may not apply in cases, such as this one, "where Congress has specifically authorized injunctive relief." CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 n. 14 (1st Cir. 2008). However, since plaintiff's request for an injunction prohibiting defendant from infringing on plaintiff's copyright and requiring that defendant, to the extent possible, remove the film from YouTube, satisfies the four-factor test, this court need not decide the question of whether the test applies to injunctions issued under 17 U.S.C. § 502.

permanent injunction." Cipes v. Mikasa, Inc., 404 F. Supp. 2d 367, 371 (D. Mass. 2005) (citing Marvin Music Co. v. BHC Ltd. P'ship, 830 F. Supp. 651, 655 (D. Mass. 1993)).

Here these factors clearly weigh in favor of granting an injunction that prohibits Lewis from infringing on Pope's copyright in the future and that requires Lewis, to the extent possible, to take the remedial step of removing the motion picture/video from YouTube.[4] With respect to the first two factors, this court finds that Lewis' continuing violation of Pope's copyright constitutes an irreparable injury and that monetary damages are insufficient to compensate Pope. See Sony BMG Music Entm't, 2009 WL 4723397, at *1 ("[o]nce copyright infringement is established, irreparable injury is generally presumed, as is the conclusion that monetary damages alone are inadequate to compensate plaintiff[].") (citing Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 344 (S.D.N.Y 2000)). The third factor, balancing the hardships, clearly tilts in favor of granting the injunction because the hardship of removing, to the extent possible, the film that the defendant uploaded to YouTube is slight and complying with copyright law in the future presents no hardship. With respect to the fourth factor, "the public interest would be served by enjoining defendant to abide by federal copyright laws." Id. See also CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) ("the public has an interest in the enforcement of federal statutes[.]").  Moreover, the film is still available to the public through lawful dissemination by Pope and, perhaps, Anthony Tenczar.

---

[4] This court interprets Pope's request for an order "that the YouTube Website showing Word From The Joint be immediately removed, Mr. Lewis [o]rdered that he has no legal or any other right to Word From [T]he Joint or any other works belonging to Mr. Pope" to be a request for a permanent injunction to that effect. Docket No. 55 ¶ 19.

As such, this court recommends that Pope's request for a permanent injunction be granted and that the following order enter:

> John D. Lewis ("defendant") shall be and hereby is enjoined from infringing the copyright protected under federal law of Joseph Jabir Pope ("plaintiff") in "Word From The Joint" and shall cease distributing "Word From The Joint" or copies thereof without plaintiff's express permission. Defendant shall, to the extent possible, remove "Word From The Joint" from YouTube.

**(iii)** **Costs of Suit**

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs" to the prevailing party on a copyright infringement claim. 17 U.S.C. § 505. Recovery of costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d). Rule 54(d) requires that costs, other than attorney's fees, be allowed to the prevailing party "[u]nless a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). Thus, "[t]here is a background presumption favoring cost recovery for prevailing parties." B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 28 (1st Cir. 2008) (additional citations omitted). Courts in this jurisdiction have limited the types of recoverable costs to those itemized in 28 U.S.C. § 1920 ("Taxation of costs"). See Shea v. Porter, No. 08-CV-12148-FDS, 2013 WL 4413341, at *1 (D. Mass. Aug. 14, 2013). Costs not listed under that section may not be awarded. See id.

Section 1920 states that the "judge or clerk of any court of the United States may tax as costs the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

13

> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

28 U.S.C. § 1920.

Pope seeks costs in the amount of $1500 for reimbursement of "court fees, postage, time, paper, pens, envelopes" and "legal research." (Docket No. 55 ¶ 17). Of those items, only court fees are recoverable under 28 U.S.C. § 1920. Therefore, this court recommends that Pope be reimbursed for any court fees that he has incurred in this matter.

### IV.     CONCLUSION[5]

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Plaintiff's Motion for a Default Judgment (Docket No. 55) be ALLOWED, and that judgment enter in favor of the plaintiff in the amount of $5,000. Furthermore, this court recommends that Pope be reimbursed for any court fees that he has incurred in this matter. Finally, this court recommends that a permanent injunction be entered against the defendant as follows:

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

John D. Lewis ("defendant") shall be and hereby is enjoined from infringing the copyright protected under federal law of Joseph Jabir Pope ("plaintiff") in "Word From The Joint" and shall cease distributing "Word From The Joint" or copies thereof without plaintiff's express permission. Defendant shall, to the extent possible, remove "Word From The Joint" from YouTube.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge